## CHARLES PEABLES vs. GEORGE HANNAFORD & al.

In this State, the legislature may regulate fisheries, which, by the common law, would be private property.

Where a statute provides, that a brook, on which a mill has been erected, shall be kept open and free for the passage of fish " from the fifth day of *May* to the fifth day of *July* in each year," the owner of the mill is entitled to the full use of the water until the *sixth* day of *May*.

The act to regulate the taking of fish in *Alewive Brook*, in *Cape Elizabeth*, (*spec. stat.* 1839, *c.* 557,) does not authorize the fish committee to enter upon the lands of others and remove obstructions to the passage of fish up and down the brook, prior to the *sixth* day of *May*, in each year.

TRESPASS *quare clausum,* for breaking up the plaintiff's dam and floom in *Cape Elizabeth.*

At the trial before SHEPLEY J., it appeared, that the plaintiff was the owner of a farm in that town, through which ran *Alewive Brook,* across which he had a dam on his own land, and a grain mill, worked by the head of water thus raised; that fish, called alewives, had formerly passed up the brook above the dam, in large numbers; that for about twelve years preceding the time of trial, the passage of the fish up the brook above the dam, had been prevented by it; that the defendants, *Hannaford* and *Davis,* with one *Dyer,* were chosen a fish committee for that town, for the year 1839; that *Hannaford* and *Davis* were sworn, but that *Dyer* was not, and did not act; that on the third day of *May,* 1839, *Hannaford* and *Davis,* with the other defendants as their servants, having previously requested the plaintiff to open a passage for the fish, which he declined, entered upon the plaintiff's

land, and removed so much of the dam as would open a passage way for the fish to go up the brook above the dam, doing no more damage than was necessary for that purpose. The defendants read in evidence from the *Province* laws, the *act* of 1741, *c.* 6, and an act of the *State* of *Maine*, approved *March* 23, 1839, (*Special Laws c.* 557.) The act provides for the appointment of a fish committee by the town, and also, that " it shall be the duty of said committee to remove all incumbrances from said brook, and cause it to be kept open and free for the passage of alewives and other fish up and down the said brook, from the sea to the *Great Pond*, so called, in said town, from the fifth day of *May* to the fifth day of *July*, in each year."

By consent of parties, the jury were directed to find a verdict for the plaintiffs for the amount of the injury sustained, on which judgment was to be rendered, if the defendants were not, by law, justified in their acts, as a fish committee under the law. And if they were justified, the verdict was to be set aside and a nonsuit entered.

The case was submitted on the briefs of the counsel.

*Codman & Fox*, for the defendants.

The owner of land holds under the limitation, that the government have the right to regulate the passage of fish up and down streams running through the land. *Stoughton* v. *Baker*, 4 *Mass. R.* 527 ; *Cottrill* v. *Myrick*, 3 *Fairf.* 223.

The defendants acted in accordance with the provisions of the act of 1839. They had a right to remove any incumbrances to the passage of fish, a reasonable time prior to the fifth day of *May*. On that day the fish were to run clear of obstruction, the whole extent of the brook, and it would be impossible to clear the whole distance in one day. The authority given in the statute, implies the power to do all things necessary to carry it into execution.

*Fessenden & Deblois*, for the plaintiff, made five points, and urged each one as a sufficient ground to show, that the justification set up was ineffectual as a protection to them. That relating to the ground of the decision, was : —

That the defendants entered and committed the acts of trespass, on the third of *May*, and the statute, under which they set up

their justification, if constitutional, does not authorize the removal of obstructions to the passage of fish until the sixth of *May.* The committee had no power to act on the fifth of *May,* that day being excluded.    6 *Dane, c.* 196, *art.* 5, § 18; 12 *Mod.* 13; 3 *Caines' R.* 250; 2 *Dougl.* 463.    This being clearly an act in derogation of private right, is to be strictly construed.    2 *Bos. & P.* 496; 4 *Mass. R.* 146; 6 *Bac. Ab.* 392; 1 *Strange,* 258; 4 *Mass. R.* 471; 15 *Mass. R.* 205.    The entry on the third of *May* was clearly a trespass.

The opinion of the Court was by

SHEPLEY J. — In this State, the legislature may regulate fisheries, which by the common law would be private property.    The *act* of 23d of *March,* 1839, *c.* 557 of the private acts, would have fully authorized the defendants to open a passage for the fish, if they had acted in conformity to its provisions.    The plaintiff being the owner of the estate, was entitled to the exclusive and uninterrupted enjoyment of it, except so far as his rights were restricted, by that act, for the public good.    The committee were required to remove all incumbrances from the brook, and cause it to be kept open and free for the passage of fish " from the fifth day of *May* to the fifth day of *July* in each year."    The word *from* being a word of exclusion, the plaintiff was entitled to the full use of the water until the sixth of *May.*    Any entry upon his land, or interference with his rights before that time was unauthorized.    It is said, that the defendants were obliged to commence as early as the third of *May,* in order to have a free passage opened by the time required; but the facts reported do not authorize such a conclusion.

The passage appears to have been opened on the first attempt, without much difficulty, and three days before they were authorized to interpose.    For this the act affords them no justification, and there must be

*Judgment on the verdict.*